DEBORAH PHARR CULPEPPER, Employee, Plaintiff-Appellant v. FAIRFIELD
    SAPPHIRE VALLEY, Employer, and AETNA CASUALTY & SURETY
    COMPANY, Carrier, Defendant-Appellees

No. 8810IC419

(Filed 4 April 1989)

1. **Master and Servant § 55.5— workers' compensation—cocktail
   waitress—assaulted while stopped to assist customer with car
   trouble—injury arising out of employment**

   In a workers' compensation action arising from an assault
   on a cocktail waitress at a resort after the waitress stopped
   to help a guest whom she recognized and whom she thought
   had car trouble, her actions were sufficiently work-related to
   warrant a conclusion that her injuries arose out of her employ-
   ment where the record showed that her decision to stop had
   its origin in her employment in that the only reason she stopped
   on the resort road was to offer a guest assistance.

2. **Master and Servant § 55.5— cocktail waitress—assaulted while
   stopped to assist customer with car trouble—increased risk
   from employment**

   A cocktail waitress who was assaulted after she stopped
   to help a customer with apparent car trouble was placed by
   her employment at an increased risk of sexual assault not
   shared by the general public where the nature of her job
   subjected her to unwelcome advances from male customers
   but at the same time required her to be cordial and friendly
   and nice; required her to serve alcoholic beverages to a variety
   of people, some of whom might be intoxicated; required her
   to work late at night in a remote mountain area; and her
   only relationship with her assailant was through her work.

3. **Master and Servant § 55.5— workers' compensation—cocktail
   waitress assaulted while assisting stranded customer
   —appreciable benefit test**

   In a workers' compensation action arising from an assault
   on a cocktail waitress after she stopped to assist a customer
   who apparently had car trouble, the Industrial Commission
   erred by concluding that her resulting injuries did not arise
   out of her employment because stopping to assist a guest
   bore a clear relation to her employer's interests. Given the
   circumstances and her employer's instructions to be very cor-

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

dial and friendly and nice and to offer any assistance she could to members and guests at the resort since most of the people coming there were looking at buying property, she had reasonable grounds to believe that what she was doing was incidental to her employment and beneficial to her employer.

4. **Master and Servant § 55.6— workers' compensation—cocktail waitress—assaulted by stranded motorist—in the course of employment**

An assault on a cocktail waitress who had stopped to help a customer who seemed to have car trouble occurred in the course of her employment where she did not remain on her employer's premises after work for such an unreasonable length of time as to remove her from the course of employment; it was clear that her kidnapping and injuries occurred on the resort premises where she worked, and the portion of a public highway within the boundaries of the resort constituted the employer's premises for purposes of the going and coming rule; even if the waitress's side trip to see her friend was a frolic which removed her from the rule's protection, she was back in the course of her employment when she decided to stop to help a known guest; and the circumstances placed her within the course of her employment because she was engaged in a work-related activity reasonably calculated to benefit her employer.

Judge GREENE dissenting.

APPEAL by plaintiff from the opinion and award of the North Carolina Industrial Commission filed 17 December 1987. Heard in the Court of Appeals 29 November 1988.

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Max E. Justice and William L. Brown; and Ball, Kelley & Arrowood, P.A., by Phillip G. Kelley, for plaintiff-appellant.*

*Russell & King, P.A., by Sandra M. King and Kathy A. Gleason, for defendant-appellees.*

BECTON, Judge.

A cocktail waitress employed at a mountain resort filed this workers' compensation claim to recover for injuries sustained

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

when she tried to escape from a guest of the resort who kidnapped and sexually assaulted her. The attack occurred after the employee's workday ended when she stopped on a resort road to assist the guest, who she assumed had car trouble. The Industrial Commission held that the employee's injuries did not arise out of and in the course of her employment, and denied workers' compensation benefits. We reverse.

I

The result of this case, like most workers' compensation cases, turns upon its unique facts. The relevant facts follow.

Fairfield Sapphire Valley, the defendant-employer, is an extensive resort community located in a remote region of the western North Carolina mountains. The plaintiff-employee, Deborah Pharr Culpepper, worked as a bartender and cocktail waitress at Sapphire Valley Country Club, a club within the resort open only to the resort's members and guests. She sometimes worked as a bartender and food waitress at the Fairfield Inn, also part of the resort complex.

Ms. Culpepper was instructed when she was hired "to be very cordial and friendly and nice and [to] *offer any assistance that [she] could*" to members and guests since "[m]ost of the people coming up there were looking at buying property" at the resort. (Emphasis added.) She was directed to serve only members and guests, and was told who those people were. One of the guests pointed out to her was Ralph Harvey Henry. Ms. Culpepper had served Mr. Henry a number of times at the country club and at the Inn, and he phoned her once while she was on duty to ask for a date. She politely declined. They had no contact outside her serving duties.

About 11:00 p.m. on 17 August 1981, Ms. Culpepper finished her work at the country club and drove to the Fairfield Inn, traversing both the resort's private roads and Highway 64 to get there. Access to the resort's recreational, dining, lodging, and other facilities was by a system of private roads branching off Highway 64. The public highway ran the length of and through the middle of the resort community, and provided the only means of entering or exiting the resort. Ms. Culpepper parked in front of the Inn and went in to turn in the day's proceeds and paperwork. She saw Mr. Henry sitting at the bar. When Ms. Culpepper finished her work and left the Inn, she discovered that Mr. Henry had pulled

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

his car alongside hers and was standing at her car door. He asked her to go out with him. She again politely declined, this time explaining that she planned to say goodbye to a co-worker who was leaving the next day. She was "trying to be nice [since] he was a guest at the [I]nn. . . ."

Uncomfortable about this encounter, Ms. Culpepper waited for Mr. Henry to leave before she drove out of the parking lot. Once he was out of sight, she drove down the resort road leading away from the Inn. She turned right onto Highway 64, driving in the direction of her home. Before she reached the perimeter of the resort, she exited the highway, turning left onto the unlit resort road leading to the country club. The road also led to the employees' quarters, where her friend who was leaving stayed.

Ms. Culpepper slowed down when she saw a car stopped at the side of the road with its flashers blinking. A person stood in the road waving his arms, motioning her to stop. As she got nearer, Ms. Culpepper saw that the person was Mr. Henry. Assuming he had car trouble, she "stopped to see if he needed help or wanted [her] to tell someone . . . to go get him." Because "he was a guest and since he was on th[e resort] property, . . . [she] felt like it would be a good thing to do to stop and see if he needed help."

Mr. Henry walked over to Ms. Culpepper's car, leaned down to talk through the window, and then yanked the door open, forcing his way into the driver's seat. Ms. Culpepper jumped out the passenger side, and ran down the road. Henry caught her, struck her in the face, and forced her, kicking and screaming, into his car. He drove her to a secluded area where, after repeatedly threatening to kill her, he sexually assaulted her.

Ms. Culpepper eventually talked Henry into returning to her car on the pretense that she would go out with him. As they started down the resort road where the attack first began, they saw people standing around her car, apparently concerned because her door was ajar and the headlights were still on. Henry sped up to get away. Fearing for her life, Ms. Culpepper leaped headfirst from his car. Her ankle caught in the door. Her body struck the pavement and was dragged along the roadway until her foot came free.

The fall from the car left Ms. Culpepper with a skull fracture and injuries to her back, leg, and face. As a result of her head injury, she suffered partial hearing loss, partial loss of the sense of taste, and complete loss of the sense of smell.

## II

Ms. Culpepper filed a claim for workers' compensation benefits.

Following a hearing, Deputy Commissioner McCrodden entered an interlocutory opinion and award in which she found that Ms. Culpepper's job as a cocktail waitress put her "at an *increased risk* of being confronted by male customers" and that the directive to be hospitable to guests at the resort "placed [her] in the position in which she found herself with Ralph Henry." (Emphasis added.) McCrodden concluded that "when plaintiff stopped to aid a guest of defendant-employer on the [employer's] premises . . ., she was acting in the scope of her employment . . ., and her injury arose in the course of that employment." McCrodden further concluded that Ms. Culpepper was "entitled to the compensable consequences of her injury by accident arising out of and in the course of her employment. . . ."

Deputy Commissioner Burgwyn later entered a separate opinion and award ordering the employer to pay Ms. Culpepper (1) $17,500 for her permanent injuries, (2) temporary total disability for a two-month period, and (3) all medical expenses incurred for treatment of her injuries. The employer appealed to the Full Commission.

The Full Commission vacated and reversed the interlocutory opinion and award. The Commission denied Ms. Culpepper compensation, finding that she "diverted from her direction home on a private mission. . . ." The Commission also made the following findings of fact:

1. . . . In her service to defendant employer's customers, plaintiff was directed to be cordial at all times *while on duty* since guests were prospective home buyers.

. . .

7. The configuration of the roads in the Fairfield complex were such that in leaving her final place of duty . . . plaintiff normally drove home by way of U.S. Highway 64. This is a public highway that runs through the resort community.

*Her diversion off of this road into the private road owned by the resort community was for a mission and purpose personal to her and not connected with the interests of her employer.*

(Emphasis added.) The Commission concluded as a matter of law that Ms. Culpepper "was acting on a personal mission . . . and *was not under any employment duty* to travel upon that road or *to stop to assist anyone being located on that road.* Consequently, her injury by accident did not arise out of [and in the course of] her employment. . . ." (Emphasis added.)

## III

Ms. Culpepper appealed to this court, contending that she is entitled to compensation because her injuries did arise out of and in the course of her employment.

### A.  *Injuries Compensable Under the Workers' Compensation Act*

An injury is compensable under the Workers' Compensation Act only if the injury (1) is an "accident" and (2) "aris[es] out of and in the course of the employment." N.C. Gen. Stat. Sec. 97-2(6) (1985). Whether an injury arose out of and in the course of employment is a mixed question of law and fact, and the Industrial Commission's findings in this regard are conclusive on appeal if supported by competent evidence. *Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 402, 233 S.E. 2d 529, 531 (1977).

Injuries resulting from an *assault* are caused by "accident" within the meaning of the Act when, from the employee's perspective, the assault was unexpected and was without design on her part. *Id. See also Stack v. Mecklenburg County,* 86 N.C. App. 550, 554, 359 S.E. 2d 16, 18 (1987), *disc. rev. denied,* 321 N.C. 121, 361 S.E. 2d 597 (1987) (injuries from sexual assault may be compensable under the Act). We hold that the Commission correctly concluded that Ms. Culpepper's injuries stemming from the sexual assault were caused by "accident." Thus, the remaining question is whether her injuries "arose out of" and "in the course of" her employment.

The employee must establish both the "arising out of" and "in the course of" requirements to be entitled to compensation. *Roberts v. Burlington Indus., Inc.,* 321 N.C. 350, 354, 364 S.E. 2d 417, 420 (1988). However, while the "arising out of" and "in

the course of" elements are distinct tests, they are interrelated and cannot be applied entirely independently. *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 252, 293 S.E. 2d 196, 199 (1982). Both are part of a *single test of work-connection. Watkins v. City of Wilmington*, 290 N.C. 276, 281, 225 S.E. 2d 577, 581 (1976) (citations omitted). Because "the terms of the Act should be liberally construed in favor of compensation, deficiencies in one factor are sometimes allowed to be made up by strength in the other." *Hoyle*, 306 N.C. at 252, 293 S.E. 2d at 199 (citations omitted).

We turn now to Ms. Culpepper's contention that her injuries "arose out of" her employment.

B. *"Arising Out Of" the Employment*

The words "arising out of . . . the employment" refer to the origin or cause of the accidental injury. *Roberts*, 321 N.C. at 354, 364 S.E. 2d at 420. Thus, our first inquiry "is whether the employment was a *contributing cause* of the injury." *Id.* at 355, 364 S.E. 2d at 421 (emphasis added). Second, a contributing proximate cause of the injury must be a *risk* inherent or incidental to the employment, and must be one to which the employee would not have been equally exposed apart from the employment. *Gallimore*, 292 N.C. at 404, 233 S.E. 2d at 533. Under this "increased risk" analysis, the "causative danger must be *peculiar to the work and not common to the neighborhood." Id.* at 404, 233 S.E. 2d at 532 (citations omitted) (emphasis added). Finally, an injury will be deemed to "arise out of" the employment if the employee's acts on behalf of a third person are of *"appreciable benefit"* to the employer. *See Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955).

We conclude that each of these conditions was met in the case before us.

(1) *Causal Relation of Employment to Injury*

[1] The record shows that the *only* reason Ms. Culpepper stopped on the resort road—particularly since she felt uncomfortable around Mr. Henry—was to offer a guest assistance, as her employer instructed her to do. *See Bunny Bread v. Shipman*, 267 Ark. 926, 591 S.W. 2d 692 (1979) (truck driver reasonably interpreted employer's instruction to be helpful to potential customers to extend to assisting disabled motorist (citing with approval *Lewis*

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

*v. Kentucky Central Life Ins. Co.*, 20 N.C. App. 247, 201 S.E. 2d 228 (1973) ).

No evidence in the record supports the Commission's finding that Ms. Culpepper was told to be helpful and cordial to guests *only while on duty.* Contrary to the Commission's conclusions based on that finding, we believe that it was reasonable for Ms. Culpepper to assume that, but for the terrible outcome, her employer would have wanted her to stop to aid a known guest apparently in trouble on the resort premises, and that this act was incidental to her employment. *See id.* Moreover, had Ms. Culpepper simply driven past a guest stranded on the dark mountain road, she reasonably could have feared a reprimand by her employer, especially since the guest recognized her car and tried to wave her down. *See id.*

In our view, Ms. Culpepper's motivation for being on the employer's road is not as important as her motivation for stopping on that road. Because *her decision to stop had its origin in her employment,* we hold that her actions were sufficiently "work-connected" to warrant a conclusion that her injuries arose out of the employment. The Commission erred by concluding otherwise.

(2) *Increased Risk*

[2] The employer contends that Ms. Culpepper faced no greater risk of sexual assault than any other citizen. The employer further argues that the motive for Mr. Henry's assault was personal, not work-related, and therefore Ms. Culpepper was not entitled to compensation. We disagree. Compensation should be denied only if the circumstances surrounding an assault will not permit a reasonable inference that the *nature* of the employment, rather than some personal relationship, created the risk of attack. *See Robbins v. Nicholson,* 281 N.C. 234, 240, 188 S.E. 2d 350, 354 (1972). While it is generally true that "there is no clearer example of non-industrial motive than rape," it is equally true that the nature of a job may heighten the risk of sexual assault. Larson, 1 *Larson's Workmen's Compensation Law,* Sec. 11.11(b) (1984) (Supp. 1987).

In our view, Ms. Culpepper's employment placed her at an increased risk of sexual assault not shared by the general public. The nature of her job as a cocktail waitress and bartender subjected her to unwelcome advances from male customers, but at the same time, required her to be "cordial and friendly and nice." Her job required her to serve alcoholic beverages to a variety of people,

some of whom might be intoxicated, and required her to work late at night in a remote mountain area. Moreover, her only relationship with Mr. Henry was through her work. We hold that these work-related factors created a unique risk of sexual assault. *Accord Orr v. Holiday Inns, Inc.*, 6 Kan. App. 2d 335, 627 P. 2d 1193 (1981), *aff'd*, 230 Kan. 271, 634 P. 2d 1067 (1981) (female bartender raped while on break); *see also Commercial Standard Ins. Co. v. Marin*, 488 S.W. 2d 861 (Tex. Civ. App. 1972) (working during dark hours increased risk of rape and murder of female gas station attendant); *Employers Ins. Co. v. Wright*, 108 Ga. App. 380, 133 S.E. 2d 39 (1963) (employee required to wait upon and serve the public was exposed to greater risk of physical danger and sexual assault); *Giracelli v. Franklin Cleaners & Dyers, Inc.*, 132 N.J.L. 590, 42 A. 2d 3 (1945) (employee raped by customer faced increased risk of sexual assault because she was required "to wait on all types of people").

   (3)  *Injuries While Acting for Benefit of Another: Appreciable Benefit Test*

[3]  Ms. Culpepper contends that the Commission erred in failing to apply the "appreciable benefits" test. The employer counters with the argument that the "appreciable benefits" test did not apply because Ms. Culpepper's decision to stop would have been of no benefit to the employer.

   It is well settled that injuries suffered by an employee while assisting a third person are not compensable "unless the acts *benefit the employer to an appreciable extent.*" *Roberts*, 321 N.C. at 355, 364 S.E. 2d at 421 (emphasis added).

> [W]here competent proof exists that the employee understood, or *had reasonable grounds to believe* that the act resulting in injury was incidental to [her] employment, or . . . would prove beneficial to [her] employer's interests or was encouraged by the employer . . . for the purpose of creating a feeling of good will, . . . compensation may be recovered, since then a causal connection between the employment and the accident [is] established.

*Guest*, 241 N.C. at 452, 85 S.E. 2d at 599 (citation omitted) (emphasis added).

   The employer argues that the decision in *Roberts v. Burlington Industries* controls this case. There, the Supreme Court applied

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

the appreciable benefits tests to deny workers' compensation benefits to the family of a furniture designer who was killed as he assisted an injured pedestrian, a stranger, while driving home from a business trip. The Court reasoned that the employee's acts were "purely altruistic," "bore no relation to his employer's interests," and provided "no actual benefit to the employer." 321 N.C. at 357, 364 S.E. 2d at 422. The Court contrasted the "Good Samaritan" situation before it from the situation presented in *Lewis v. Kentucky Cent. Life Ins. Co.*, 20 N.C. App. 247, 201 S.E. 2d 228 (1973). We believe that *Lewis*, not *Roberts*, controls the outcome here.

In *Lewis*, an insurance salesman was injured when he stopped on the highway to assist a woman he recognized as a policyholder. The Commission found that, at the time he stopped, the employee "had reasonable grounds to believe that [his assistance] would be beneficial to his employer's interests, was incidental to his employment, and would advance his employer's work." *Id.* at 249, 201 S.E. 2d at 230. This court upheld the compensation award, concluding that the employee "acted, not merely to an appreciable extent, but even to a substantial extent, for the benefit of his employer" by assisting a known customer with car trouble. *Id.* at 250, 201 S.E. 2d at 230. The same analysis applies here.

Ms. Culpepper was traveling on a private resort road in a remote mountain area when she encountered an apparently disabled motorist flagging her down. She recognized that person as a guest at the resort, and knew he recognized her. Given the circumstances and her employer's instructions, we conclude that she "had reasonable grounds to believe that what [s]he was doing was incidental to [her] employment and beneficial to [her] employer, and that, if [her] employer had been there, [the employer] would have instructed [her] to render such . . . assistance." *Guest*, 241 N.C. at 453, 85 S.E. 2d at 600. Because stopping to assist a guest bore a clear relation to her employer's interests, we hold that the Commission erred in concluding that her resulting injuries did not "arise out of" her employment.

We next address Ms. Culpepper's contention that her injury occurred "in the course of" her employment.

B. *"In the Course Of" Employment*

[4] The phrase "in the course of the employment" refers to (1) the time, (2) the place, and (3) the circumstances in which the

injury occurred. *Roberts*, 321 N.C. at 354, 364 S.E. 2d at 420. Apply-
ing these factors to the case before us, we hold that Ms. Culpepper's
injuries occurred "in the course of" her employment.

(1) *Time*

The "course of employment" continues for a *reasonable time*
after work ends, and may include time spent going to or coming
from work. *See generally Harless v. Flynn*, 1 N.C. App. 448, 456,
162 S.E. 2d 47, 52 (1968). In our view, Ms. Culpepper did not remain
on the employer's premises after work for such an unreasonable
length of time as to remove her from the course of employment.
*Cf. Alford v. Quality Chevrolet Co.*, 246 N.C. 214, 217, 97 S.E.
2d 869, 871 (1957) (because employee spent five hours "cavorting"
before starting home, "[a]ll reasonable time for travel home from
work had expired"), with *Zahn v. Associated Dry Goods Corp.*,
655 S.W. 2d 769 (Mo. App. 1983) (employee raped while leaving
employer's premises after shopping there for 20 minutes was still
in course of employment; time on premises did not exceed reasonable
time in which to leave work). Here, the assault occurred only moments
after Ms. Culpepper's workday ended. We hold that in the unique
circumstances of this case, the time elapse did not exceed a reasonable
time in which to leave work.

(2) *Place*

With respect to *place*, the "course of employment" includes
the employer's premises, and may extend to adjacent premises
used as a means of ingress and egress to the employer's premises.
*Bass v. Mecklenburg County*, 258 N.C. 226, 233, 128 S.E. 2d 570,
575 (1962). In particular, injuries sustained *on premises controlled
or owned by the employer* while going to or coming from work
generally are deemed to occur "in the course" of employment.
*Id.* at 232, 128 S.E. 2d at 574; *accord Robinson v. North Carolina
State Highway Comm'n*, 13 N.C. App. 208, 185 S.E. 2d 333 (1971)
(employee in course of employment while leaving work on road
controlled by employer). *See also Helton v. Interstate Brands Corp.*,
155 Ga. App. 607, 271 S.E. 2d 739 (1980) (employee kidnapped from
employer's parking lot and subsequently sexually assaulted was
still in the course of employment).

It is clear that Ms. Culpepper's kidnapping and injuries oc-
curred on the resort premises. What is disputed is whether she
was still protected by the "going and coming" rule when she stopped

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

for Mr. Henry. The employer first argues that protection of the rule ended when Ms. Culpepper left the employer's private road leading from the Inn and entered the public highway. We disagree. Highway 64 was an integral part of the resort complex. Employees and patrons regularly traveled the highway to get from one part of the resort to another, and signs indicating where to turn to reach the various facilities appeared along the highway. At least one resort-owned building was located there. Given these circumstances, we conclude that the portion of Highway 64 within the boundaries of the resort constituted the employer's premises for purposes of the going and coming rule. *See, e.g., Rozelle v. Robertson*, 29 A.D. 2d 589, 285 N.Y.S. 2d 449 (1967) (public street through hospital grounds was part of employer's premises).

We reject the employer's next contention—and the Commission's conclusion—that because Ms. Culpepper deviated from the direct route home on a "personal mission," she was not covered by the going and coming rule, and therefore was no longer in the course of employment. Even had Ms. Culpepper's side trip to see her friend been a "frolic" which removed her from the rule's protection, in our view, she was *back in the course of employment* when she decided to stop to help a known guest. *See generally, Chandler v. Nello L. Teer Co.*, 53 N.C. App. 766, 770-71, 281 S.E. 2d 718, 720-21 (1981), *aff'd*, 305 N.C. 292, 287 S.E. 2d 890 (1982) (employee returning to work from private mission is in course of employment); *Larson*, Secs. 19.10, 19.27 and cases cited therein (business motive intervening during personal mission bring employee back within course of employment). Although Ms. Culpepper *drove* on the road for a personal reason, what matters is that she *stopped* for a reason related to her employment.

(3) *Circumstances*

With respect to *circumstances*, an employee "engaged in activities that [s]he is authorized to undertake and that are calculated to further, directly or indirectly, the employer's business" acts within the course of employment. *Pittman v. Twin City Laundry & Cleaners*, 61 N.C. App. 468, 472, 300 S.E. 2d 899, 901-02 (1983). Even if an "employee is not engaged in the actual performance of the duties of [her] job," this "does not preclude [her] accident from being one within the course of employment." *Harless*, 1 N.C. App. at 456, 162 S.E. 2d at 53. *See also Brown v. Jim Brown's Service Station*, 45 N.C. App. 255, 257, 262 S.E. 2d 700, 702 (1980)

**CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY**

[93 N.C. App. 242 (1989)]

(injury occurring outside regular hours and normal place of work is, nonetheless, "in the course of" employment if employee performed activity requested by and for benefit of employer).

The employer relies on *Poteete v. North State Pyrophyllite Co.*, 240 N.C. 561, 82 S.E. 2d 693 (1954), to assert that when an employee returns for personal reasons to the employer's premises after the workday has ended, and is injured there, the employee is not entitled to compensation. In *Poteete*, the employee was injured when he fell from the wall where he sat waiting to collect a debt from a co-worker. Unlike the case before us, the employee in *Poteete* was not engaged in any work-related activity when he was injured. Had the employee been so engaged, he would have been entitled to compensation because he would have been back in the course of employment.

We conclude that Ms. Culpepper returned to the course of employment when she stopped to assist a guest. Because she was engaged in a work-related activity reasonably calculated to benefit her employer, the Commission erred in holding that her injury did not occur in the course of employment.

IV

We hold that Ms. Culpepper's injuries arose out of her employment because the injuries were causally connected to her employment, the nature of her job increased the risk of sexual assault, and her act of stopping to assist a guest was of appreciable benefit to her employer. We further hold that the conjunction of the time, place, and circumstance factors brought Ms. Culpepper's injury within the course of her employment. Accordingly, we reverse the Industrial Commission decision, and order the Commission to award Ms. Culpepper the compensable consequences of her injury.

Reversed.

Judge EAGLES concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree with much of the majority's analysis of whether petitioner's injuries arose from, and occurred during the course of,

her employment. However, the majority has mistakenly dismissed the significance of Finding No. 1, the only finding by the Commission relevant to determining what petitioner's "employment" was. Determining the nature of plaintiff's employment is critical since it permits resolution of the mixed questions of law and fact whether petitioner's employment was a proximate cause of her injuries, presented a risk "peculiar to her employment," and rendered "reasonable" petitioner's apparent belief her actions were "incidental" to her employment and beneficial to her employer. *Cf. Roberts v. Burlington Indus., Inc.*, 321 N.C. 350, 355, 364 S.E. 2d 417, 421 (1988) (employment must be contributing cause of injury); *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 403, 233 S.E. 2d 529, 532 (1977) (employment must subject employee to risk peculiar to, "and reasonably related to," employment); *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 453, 85 S.E. 2d 596, 600 (1955) (employee had reasonable grounds to believe act resulting in injury was incidental to employment and beneficial to employer's interests).

I particularly note the *Roberts* Court's manner of distinguishing its facts from those in *Guest*, where the employee was clearly carrying out his employment duties when he rendered the disputed assistance: "[T]he injured employee [in *Guest*] . . . *had reason to believe that . . . complet[ing] his mission for his employer was contingent upon*" rendering assistance. *Roberts*, 321 N.C. at 356, 364 S.E. 2d at 422 (emphasis added). To be "reasonable," petitioner's inference that her assistance was incidental to her employment must somewhere be premised on the objectively-determined facts of her employment, rather than on an endless chain of other inferences, however well-intentioned. In this case, it is therefore important that we determine what petitioner was employed to do, and what she in fact did as a result of that employment, in order to determine whether she had reason to believe her employment was, as in *Roberts*, "contingent" on rendering assistance to her former customer.

Under the particular facts revealed by this record, the reasonableness of this petitioner's belief primarily turns on one factual issue: whether her employer instructed her to be cordial and helpful while carrying out her primary duties as bartender and waitress, or whether her employer instead instructed her to be cordial and helpful at all times *in addition to* her bartending/waitressing duties. If the latter characterization is correct, then it may be correct to state petitioner reasonably extrapolated a

belief her employment justified her stopping to aid her former customer: if petitioner was in effect instructed to be prepared for intensely personal contact with her customers *at all times*, then her situation is analogous to the insurance salesman granted compensation in *Lewis v. Kentucky Central Life Ins. Co.*, 20 N.C. App. 247, 201 S.E. 2d 228 (1973). The *Roberts* Court approved compensation to the *Lewis* petitioner since the petitioner insurance salesman "was engaged in an 'intensely personalized calling' requiring frequent contact with his policy holders." 321 N.C. at 357 n.2, 364 S.E. 2d at 422 n.2. Conversely, if the former characterization is accurate, then petitioner's belief would not be reasonable since stopping to aid a former customer would be more directly analogous to the petitioner denied compensation in *Roberts*: the only benefit to petitioner's employer would be speculative goodwill. *Cf. Roberts*, 321 N.C. at 355-56, 364 S.E. 2d at 421 (rejecting speculations about goodwill).

I believe Commission Finding No. 1 resolves the characterization of petitioner's employment in this respect. It states:

> 1. In August 1981, plaintiff worked for defendant-employer, a resort community, as a bartender and part-time cocktail waitress. . . . In her service to defendant employer's customers, plaintiff was directed to be cordial at all times *while on duty* since guests were prospective home buyers.

The majority completely dismisses Finding No. 1 as unsupported by any evidence. This is simply incorrect. There is sufficient evidence in the record from which the Commission could have drawn reasonable inferences to support Finding No. 1—despite any argument a contrary inference might have been drawn with equal reason. At numerous points in the transcript, petitioner herself refers to her employment as only consisting of bartending, waitressing, and certain directly incidental duties:

Q: What was your position of employment?

A: I was a bartender and part-time waitress.

Q: And, as a bartender and part-time waitress, just briefly tell us what your functions were—what you were to do.

A: When I was a bartender, I would go on to make sure there was ice and open up, you know, the cabinets and bring out the bottles and the mixes and the juices and whatever

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

else I needed back there and then just go on and work with people when they came in and serve—only members could be served—serve the members of the club or guests at the inn. When I was a waitress, you know, I just waited on tables. [T. 4].

. . . .

Q: Were you working as a bartender or a waitress [the night of your injuries]?

A: It was a family night dinner so I was doing both. I was working at the bar and also serving stuff and cleaning and all that.

. . . .

Q: And, when you completed your serving activities there, what else remained to be done as a part of your work?

A: Well, I had to clean up the bar and clean up the kitchen and lock it up—I had paper work to complete and turn in from the day and turn in money. So, I had to go take that to the inn. [T. 7-8].

. . . .

Q: Okay. So, you drove your car from the country club around eleven or so at night. Your work at the country club as a bartender and waitress was concluded, is that correct?

A: After—

Q: With the exception that you had to turn the money in?

A: Yes. [T. 42].

Q: And, when you turned in your paperwork and the xerox copy at the front desk, having already turned in the money, you had then completed your work responsibilities for that evening at Fairfield, isn't that correct?

A: Yes, sir.

[T. 44]. These exchanges certainly support the Commission's Finding No. 1 that petitioner's employment consisted of bartending/waitressing and only required petitioner to aid customers while on duty.

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

The *only* reference in the entire transcript to any requirement of her employment that petitioner be otherwise "cordial" or helpful to guests at the resort is the following:

> Q: Did you have occasion during the course of that employment to receive any instructions from your employer as to how you were to conduct yourself with regard *to those customers that you serve?*
>
> A: Well, yes. Most of the people coming up there were looking at buying property *and we were to be very cordial and friendly and nice and offer any assistance that we could.*

[T. 5 (emphasis added)]. This is the only reference in the record to any generalized cordiality or courtesy. There is no evidence anywhere else in the record that this petitioner, or any other bartender/waitress, ever aided a guest at the resort apart from their duties as bartender or waitress.

Given this solitary reference to the alleged "cordiality" requirement, petitioner is in a fatal quandary. If, as the majority asserts, petitioner's testimony did not itself constitute any competent evidence to support the Commission's Finding No. 1, then there is similarly no competent evidence from which the Commission could have conversely determined that petitioner *had been* instructed to be cordial and helpful even when not "on duty." If there is no competent evidence whatsoever on the question of any "cordiality" requirement, then plaintiff has clearly failed to meet her burden of showing cordiality was such a part of her employment that it justified her stopping to aid a former customer after she had completed her work as a bartender/waitress.

Conversely, if petitioner's lone reference *is* sufficient evidence from which the Commission could determine what petitioner's employer instructed her to do, then I believe the Commission's inferences were clearly reasonable and binding on this appeal. The Commission is the sole judge of the credibility of witnesses and the weight given their testimony. It may accept any part and reject any part of that testimony. *Blalock v. Roberts Co.*, 12 N.C. App. 499, 504, 183 S.E. 2d 827, 830 (1971). The Commission is permitted to draw reasonable inferences from the circumstances shown by the evidence: that other reasonable inferences could have been drawn is no indication of error since deciding which permissible inference to draw from evidentiary circumstances is as much within

CULPEPPER v. FAIRFIELD SAPPHIRE VALLEY

[93 N.C. App. 242 (1989)]

the fact finder's province as its deciding which of two contradictory witnesses to believe. *Snow v. Dick & Kirkman, Inc.*, 74 N.C. App. 263, 267, 328 S.E. 2d 29, 32, *disc. rev. denied*, 314 N.C. 118, 332 S.E. 2d 484 (1985). "The courts are not at liberty to re-weigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different conclusions might have been reached." *Rewis v. New York Life Ins. Co.*, 226 N.C. 325, 330, 38 S.E. 2d 97, 100 (1946).

I note the Commission explicitly rejected petitioner's proposed finding that, "plaintiff had been directed by defendant-employer as part of her employment instructions to offer any assistance to guests that she could." Irrespective of how reasonable that finding may have been, I believe the Commission's Finding No. 1 was an equally (if not more) reasonable inference to draw from petitioner's lone reference in the transcript to her instruction to be "cordial." Under *Roberts*, Finding No. 1 in turn directly supports the Commission's Conclusion No. 2 that, "when plaintiff stopped to aid an individual who later assaulted her, she was not acting in the scope of her employment with defendant-employer and her injury did not arise out of the course of that employment." In addition, that finding would preclude any notion that petitioner had "returned" to her employment when she stopped to aid her former customer. Consequently, the Commission's findings also support its Conclusion No. 1.

My analysis of the record in no way arises from any gross generalization that an employer may always limit an employee's right to compensation simply by giving certain instructions. The nature of a petitioner's employment must be realistically based, not on any particular job title, but on what the employee actually does as a result of his employment. However, *under the facts of this particular administrative record*, the only factual basis petitioner asserts for her belief that her employment somehow required her to assist any guest in any way at any time is founded on the lone instruction by her employer quoted earlier. I simply believe that lone instruction as characterized in Finding No. 1 was insufficient to support a reasonable belief that petitioner's employment was contingent on her rendering aid under these circumstances. To hold otherwise is to adopt the "positional risk" doctrine rejected in *Roberts*.

STATE EX REL. UTILITIES COMM. v. SOUTHERN BELL

[93 N.C. App. 260 (1989)]

Thus, I would affirm the order of the Commission denying petitioner compensation for her injuries. I therefore respectfully dissent.