The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The employee is Diana J. Lewis and she was an employee of the defendant-employer on October 2, 1996.
3. The employer is the Orkand Corporation.
4. At the time of the alleged injury by accident, the employer was insured for this risk by Zurich-American.
5. The defendant-employer on October 2, 1996, regularly employed three or more employees and is bound by the North Carolina Workers Compensation Act.
6. An employer-employee relationship existed between the employer and the employee on the 2nd day of October, 1996, the alleged date of injury.
7. The employees average weekly wage on October 2, 1996 was $300.00 (which yields a compensation rate of $200.00 per week).
8. The employees claim is for an injury to her left hand, wrist and forearm, her right foot and her lumbar spine(at L4/5) arising out of an accident in the scope and course of her employment, which said claims defendants have denied.
9. The employee has been absent from work during the following periods: October 3 through October 10, 1996 and from January 18, 1997 to the present. The employee alleges that all such periods of absence are because of her temporary total disability caused by the injury sustained arising out of an accident in the scope and course of her employment with the defendant-employer.
10. A maroon index of medical records marked as stipulated exhibit 1 was received into evidence.
11. Subsequent to the hearing before the Deputy Commissioner, a second set of medical records marked as stipulated exhibit 2 was received into evidence.
***********
 ADDITIONAL EXHIBITS
1. A diagram of the location of the oak table was marked as plaintiffs exhibit 1 was received into evidence.
2. The transcript of a pre-trial deposition of the plaintiff marked as defendants exhibit 1 was received into evidence.
3. Photographs marked as defendants exhibits 2-A, 2-B, 2-C, 2-D, and 2-E were received into evidence.
***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old and had a high school degree. For approximately ten years prior to October 2, 1996 she worked for various subcontractors of the federal government entering climatic data into a computer. During the three years prior to October 2, 1996, the subcontractor for whom she worked was Orkand Corporation.
2. At the time of her injury by accident, the plaintiffs work hours with the defendant were from 6:00 a.m. to 2:30 p.m., five days per week. During each work day she was allowed 2 fifteen-minute breaks and a thirty-minute lunch break. At the time of the injury, the premises of the defendant in which the plaintiff worked were located on the fourth floor of the new Federal Building in Asheville, North Carolina.
3. At the time of the injury, the new Federal Building in Asheville was open to the public and housed several federal agencies and subcontractors in addition to the defendant, including the offices of a U.S. Senator and the Social Security Administration. At all times relevant to her claim, members of the general public could enter the new Federal Building through an entrance on the second floor. Located at this entrance were one or more security guards, a metal detector, an x-ray/conveyor machine upon which people entering the building would place their bags and or personal belongings, and a heavy oak table that would catch such bags and personal belongings as they exited the x-ray/conveyor machine. The security program on the second floor was established in order to maintain the safety of all persons who were located in the federal building, including the employees for the defendant-employer. The security guard and equipment were provided by a company under contract with the federal government.
4. The entrance area referenced above leads to an open lobby area, where a person entering the building could continue walking straight through in order to reach hallways which lead to second floor offices or to reach elevators which access the other floors of the building. Also, a person entering the building through this entrance could walk to their left in order to reach a cafeteria which is located adjacent to the lobby area.
5. At approximately 7:00 a.m. on October 2, 1996, the plaintiff took one of her fifteen-minute breaks. During the course of the break, she left her work area on the fourth floor and went to the cafeteria on the second floor to purchase a biscuit. After purchasing the biscuit, the plaintiff exited the cafeteria with the biscuit in her right hand and began walking diagonally across the lobby area in order to take an elevator back to her workstation on the fourth floor. As she crossed the lobby, the plaintiff saw the table, which was to her right, begin to fall. Instinctively, the plaintiff attempted to catch the falling table with her left hand. In doing so, plaintiff walked 2 to 3 steps out of her normal path of travel.
6. The plaintiff caught the table with her left hand as it fell, but the table slipped from her hand and landed on her right foot. After the table was removed from her foot, the plaintiff proceeded to the elevator and returned to her work area, where she waited for her supervisor to arrive. She had begun feeling pain in her foot and arm. When her supervisor arrived, the plaintiff reported the incident to her and some member of the federal governments General Services Administration with responsibility over the building.
7. Later that morning, plaintiff was treated in the emergency room at Memorial Mission Hospital and diagnosed with a contusion of her right foot and a sprain of her left wrist and forearm. She was seen again in the emergency room at Memorial Mission Hospital on October 7, 1996 for follow-up care. As a result of the contusion to plaintiffs right foot and the sprain in her left forearm and wrist resulting from the October 2, 1996 incident, plaintiff was unable to earn any wages from October 3, 1996 to October 10, 1996. She returned to work on or about October 11, 1996, and was released from care of her arm and foot on November 8, 1996 without permanent impairment or restrictions to her arm and foot.
8. Plaintiff continued to work without difficulty doing her job from October 11, 1996 through Friday, January 17, 1997. Sometime during the weekend of January 17, 1997, plaintiff experienced the onset of severe back pain. She had recently done housework. Her first documented complaint of back pain to a medical provider was to Sue Conner, FNP, at the office of Dr. S.E. Kirkley, on January 21, 1997. She had an MRI scan of her lumbar and thoracic spine on January 31, 1997. She was referred to Dr. Ralph Loomis on March 4, 1997. Dr. Loomis ordered a myelogram/CT scan which was performed on March 10, 1997. Dr. Loomis diagnosed the plaintiff with a disc herniation at L4-5 and recommended a micro lumbar diskectomy. Plaintiff has not had the recommended surgery and has not worked since January 17, 1997.
9. As a result of her injury, plaintiff began experiencing pain in her lower back on a daily basis during November and December of 1998.
10. As a result of the October 2, 1996 incident, plaintiff sustained a disc protrusion on the left portion of her lower back at the L4-L5 level with flattening of the L4-L5 left nerve root, a contusion to her right foot, and a sprain in her left forearm and wrist.
11. There is insufficient evidence to support a finding that plaintiff was unable to earn wages for the time period beginning January 18, 1997 to September 8, 1998. Dr. Kirkleys records do not reflect that he restricted plaintiff from returning to work beginning on January 17, 1997.
12. As a result of the disc protrusion on plaintiffs left portion of her lower back at the L4-L5 with flattening of the L4-L5 left nerve root, plaintiff has been unable to earn any wages beginning September 9, 1998 to the date of the hearing before the Deputy Commissioner and continuing.
13. Surgical treatment of plaintiffs disc protrusion at the L4-5 level is reasonably necessary to effect a cure, relieve pain and/or lessen plaintiffs disability. Plaintiff was not at maximum medical improvement at the time of the hearing before the Deputy Commissioner.
14. Although not in the workspace used by her employer, plaintiff was in part of the facilities which employers employees went through every day on breaks during the workday. The only cafeteria in this building was located near the entrance and the security system. Since plaintiff had only short breaks, she was required to go to this cafeteria in order to obtain refreshment during her work day. The conditions of employment placed the employee near this table every time she went to the cafeteria and as she entered, left and, at times, moved about the Federal Building.
15. The incident with the falling table was an injury by accident. Plaintiff was in the course and scope of her employment when she suffered the injury by accident.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable, it must be an injury "arising out of and in the course of the employment. N.C. Gen. Stat. 97-2(6). These are two separate requirements a claimant must establish in order to receive compensation. Hoyle v. IsenhourBrick Tile Co., 306 N.C. 248, 293 S.E.2d 196 (1982).
2. Plaintiff bears the burden of proving that she suffered (1) an injury by accident (2) arising out of her employment and (3) within the course of her employment. N.C. Gen. Stat. 97-2(6);Culpepper vs. Fairfield Sapphire Valley, 93 N.C. App. 242,377 S.E.2d 777, affd. per curiam 325 N.C. 702, 386 S.E.2d 174 (1989). While the concepts of "arising out of and "in the course of are somewhat interrelated, they are separate requirements which must both be satisfied in order for an employee to recover for injuries suffered. Bartlett vs. Duke University, 284 N.C. 230,200 S.E.2d 193 (1973). The concept of "arising out of refers to the origin of the accident but does not mean that the accident was caused by the employment. Harless vs. Flynn, 1 N.C. App. 448, 162 S.E.2d 47
(1968). Only some causal connection is required. Id. Plaintiffs injuries clearly arose out of her employment with Defendant Orkand.
3. Plaintiff remained about her employers business throughout the entire course of events relevant to the issues in controversy. When taking a personal break, plaintiff continued to provide benefit to her employer. Rewis vs. New York Life InsuranceCompany, 226 N.C. 325, 38 S.E.2d 97 (1946); Harless vs. Flynn,supra.
An employee, while about his employers business, may do those things which are necessary to his own health and comfort, even though personal to himself, and such acts are regarded as incidental to the employment. "Such acts as are necessary to the life, comfort, and convenience of the workman, while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of employment. Rewis vs. New York Life, supra, 226 N.C. 325, at 328 (citations omitted).
The possible deviation of 2 to 3 steps in an instinctive attempt to catch a falling table did not result in appreciable departure from plaintiffs employment. See Guest vs. Brenner Iron MetalCompany, 241 N.C. 448, 85 S.E.2d 596 (1954). Plaintiff simply never departed from her employment, and the accident arose out of this employment. Defendants reliance upon the body of law which has been developed pertaining to employees who depart from their employment to act as a "Good Samaritan is misplaced. Plaintiff did not come to the assistance of anyone but merely reacted to an unexpected event occurring during working hours and on the employers premises.
4. Plaintiff was simply trying to return to her workstation from a break when she came upon a sudden, unexpected predicament. Thus, the only "departure which could be attributed to plaintiff is the distance (if any) she covered in the split second after she realized that the table was falling and the instant when she attempted to catch it. Plaintiff was quite candid in acknowledging that she did not have time to think or make a decision as to her course of action. She honestly denied any conscious thought in this process but simply acted instinctively.
5. Even if plaintiff is viewed as having departed slightly from her employment to aid a third party, this accident arose from plaintiffs employment if (1) her acts provided appreciable benefit to her employer; (2) plaintiff had a reasonable basis to believe that her acts were incidental to her employment or (3) plaintiffs employment placed her at increased risk of injury. Roberts vs.Burlington Industries, 321 N.C. 350, 364 S.E.2d 417 (1988); Guestvs. Brenner Iron Metal Company, supra. Although plaintiff did not intentionally go to the aid of another, her acts certainly were beneficial to her employer and resulted from an increased risk which was incidental to her employment.
6. The plaintiffs actions provided appreciable benefit to her employer.The table that fell on plaintiff was part of a security system utilized to ensure the safety of plaintiff, her co-employees and all other persons entering the Federal Building where plaintiffs work station was located. This security system was installed because of past problems within this particular building, including at least one bomb threat. Since plaintiff and her co-workers received the benefit of the security provided by this system, plaintiffs employer obtained some benefit from plaintiffs efforts to prevent damage to a part of this system. If either the guard or the equipment were damaged, the employers employees could be without needed protection for some period of time.
7. Because the employees employment put her in the place where this table fell, her injuries are compensable. See Powers vs. LadysFuneral Home, 306 N.C. 728, 295 S.E.2d 473 (1982).
8. Plaintiff is entitled to receive temporary total disability compensation in the amount of $200.00 per week from October 3, 1996 to October 10, 1996 and from September 9, 1998 to the date of the hearing before the Deputy Commissioner and continuing. N.C. Gen.Stat. 97-29.
9. Plaintiff is entitled to have the defendants pay for all medical treatment arising from the October 2, 1996 injury by accident to the extent such treatment tends to effect a cure, provide relief and/or lessen plaintiffs disability. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation in the amount of $200.00 per week from October 3, 1996 to October 10, 1996 and from September 9, 1998 to the date of the hearing before the Deputy Commissioner and continuing until further order of the Industrial Commission. This award is subject to the attorneys fee approved below. The portion of this amount that has accrued shall be paid in a lump sum to the plaintiff subject to the attorneys fees approved below.
2. Defendants shall pay all medical expenses incurred by the plaintiff as a result of the contusion to plaintiffs right foot, the sprain in her left forearm and wrist, and the disc protrusion on the left portion of plaintiffs lower back at the L4-L5 with flattening of the L4-L5 left nerve root.
3. Defendants shall pay expert witness fees in the amount of $240.00 to Dr. Loomis and $155. 00 to Dr. McQuiston.
4. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under paragraph 1 this Award is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth check shall be paid directly to counsel for the plaintiff.
5. Defendants shall pay the costs.
This 4th day of May 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER