GREGORY LEE HAUSER, Dependent of the late JANET NOBLE HAUSER, Employee, Plaintiff-Appellee v. ADVANCED PLASTIFORM, INC., Employer; ZENITH INSURANCE COMPANY (F/K/A RISCORP OF NORTH CAROLINA, INC.), Carrier, Defendant-Appellants

No. 98-904

(Filed 1 June 1999)

**1. Workers' Compensation— employee murdered—course and scope of employment**

The full Industrial Commission in a workers' compensation action did not err by concluding that an employee's death arose out of and in the course of her employment where the employee was an office manager who was kidnapped and murdered by a recently laid off employee. There was sufficient evidence to allow a reasonable inference that the nature of decedent's employment created the risk of attack rather than some personal relationship and the evidence tends to show that decedent was called to action by some person superior in authority. Although defendants argued that the compensability of decedent's death depended upon interpretation of the evidence presented through witnesses, the Commission based its decision on the facts and the law.

**2. Workers' Compensation— attorney fees—evasive and incomplete interrogatories**

The Industrial Commission in a workers' compensation action did not err by awarding attorney fees where the Commission found bad faith, unfounded, stubborn litigiousness, and that plaintiff was forced to prove the existence of material evidence suppressed by defendants. N.C.G.S. § 1A-1, Rule 37 provides sanctions including attorney fees to parties who provide evasive or incomplete answers to discovery requests.

### 3. Workers' Compensation— appeal from deputy commissioner—issues raised

The issue of attorney fees in a workers' compensation action was properly before the full Commission even though defendants argued that plaintiff waived the issue by failing to identify it on his Form 44. Plaintiff raised the issue in his brief to the deputy commissioner and, inasmuch as the Commission decides claims without formal pleadings, it is the duty of the Commission to consider every aspect of plaintiff's claim whether before a hearing officer or on appeal to the full Commission. Plaintiff appealed the issue in accordance with the guidelines in N.C.G.S. § 97-85.

Appeal by defendants from opinion and award of the North Carolina Industrial Commission filed 20 March 1998. Heard in the Court of Appeals 18 March 1999.

*Lore & McClearen, by R. James Lore, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by C.D. Taylor Pace and W. Scott Fuller, for defendant-appellants.*

McGEE, Judge.

Plaintiff seeks workers' compensation benefits in the death of his wife, Janet Noble Hauser (Hauser), who was murdered 4 December 1995. Hauser was the office manager for Advanced Plastiform, Inc. (Advanced Plastiform). She was kidnapped and murdered by Leroy Mann (Mann), a former employee of Advanced Plastiform who had recently been laid off. A deputy commissioner of the North Carolina Industrial Commission filed an opinion and award 9 June 1997 denying plaintiff's claim for benefits, concluding that "[t]he decedent's death did not arise out of and in the course of her employment with the defendant." The deputy commissioner also denied plaintiff's request for attorneys' fees. Plaintiff appealed to the Full Commission.

The Full Commission found as a fact that "[o]n or about Friday, 1 December 1995, [Advanced Plastiform] made a decision to lay off several production personnel, one of whom was Leroy Mann." Steve Judd and Deborah Judd were co-owners of Advanced Plastiform. Steve Judd testified that after Advanced Plastiform made the layoff decisions, he agreed that Hauser should "put a memo together to explain" to the laid off employees how to obtain unemployment benefits. The Commission found that Hauser, "under the supervision of Deborah Judd . . . had typed an informational sheet regarding unem-

ployment benefits" to be distributed to the laid off employees. The Commission found that defense witness Albert Tripp (Tripp), Advanced Plastiform's production manager supervisor, informed Mann by telephone Sunday afternoon, 3 December 1995, that he was being laid off, and "referred Mann to call Janet Hauser . . . for further information regarding his unemployment benefits."

The Commission found that "[c]ontemporaneous with leaving to meet Leroy Mann, Janet Hauser informed a person who answered the phone for [Advanced Plastiform] at lunch, Donna Timm[]" of her lunch appointment with Mann at a local restaurant and the fact that she was "carrying Mann a piece of paper[.]" The Commission found that there was "overwhelming evidence" presented that this piece of paper "referred to the employee informational sheet regarding unemployment benefits previously typed by Janet Hauser and approved by Deborah Judd."

The Full Commission reversed the opinion and award of the deputy commissioner in an opinion and award filed 20 March 1998, concluding that plaintiff "is entitled to receive all benefits under the Workers' Compensation Act resulting from [Janet Hauser's] death." The Commission concluded that "critical evidence on the issue of [the] compensability of plaintiff[']s case" had been suppressed by Advanced Plastiform and the Judds, and that "independent sanctions for discovery abuse" were justified. The Commission awarded plaintiff attorneys' fees and $2,000.00 as reimbursement for funeral expenses. Defendants appeal.

I.

[1] Defendants argue that the Industrial Commission's opinion and award should be reversed because "in reversing the Deputy Commissioner's credibility findings, on a cold record, without explanation, and without good cause, the full Commission failed to follow North Carolina law." Defendants also argue that Hauser's murder did not arise out of and occur in the course and scope of her employment. We disagree.

The standard by which we review decisions by the Industrial Commission is stated in *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986) (citation omitted): "The Commission's fact findings will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding."

Our Supreme Court recently stated:

> Whether the full Commission conducts a hearing or reviews a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commission—not the hearing officer. It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony. Consequently, in reversing the deputy commissioner's credibility findings, the full Commission is not required to demonstrate, as *Sanders* [*v. Broyhill Furniture Industries*, 124 N.C. App. 637, 478 S.E.2d 223 (1996), *disc. review denied*, 346 N.C. 180, 486 S.E.2d 208 (1997)] states, "that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one." *Sanders*, 124 N.C. App. at 641, 478 S.E.2d at 226. To the extent that *Sanders* is inconsistent with this opinion, it is overruled.

*Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413-14 (1998). Defendants argue that the "Deputy Commissioner['s] . . . findings hinge[d] on credibility determinations[,]" and that "[i]t was only by rejecting *nearly* all of the testimony which [the] Deputy Commissioner . . . found credible and convincing that the Full Commission managed to conclude that Hauser's murder arose out of and occurred in the course and scope of her employment[.]"

Defendants further argue that "whether Hauser's death is compensable is a direct function of one's interpretation of the evidence presented through the witnesses." To the contrary, whether Hauser's death arose out of and in the course of her employment, and is therefore compensable, is a mixed question of fact and law. *See Pittman v. International Paper Co.*, 132 N.C. App. 151, ——, 510 S.E.2d 705, 707 (1999) (citation omitted). The findings of the Full Commission tend to show that the Commission based its decision to award plaintiff workers' compensation benefits on the facts of the case and the law and not, as defendant argues, by merely attempting to interpret the evidence as it was "presented through the witnesses."

The North Carolina Workers' Compensation Act defines "injury" to "mean only injury by accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (Cum. Supp. 1998). "The term 'arising out of' refers to the origin of the injury or the causal connection of the injury to the employment, while the term 'in the course of' refers to the time, place and circumstances under which the injury occurred." *Pittman* at ——, 510 S.E.2d at 707 (citations

omitted). In *Kiger v. Service Co.*, 260 N.C. 760, 762, 133 S.E.2d 702, 704 (1963), our Supreme Court stated: "Where any reasonable relationship to employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment.' "

Deborah Judd testified that she is the "corporate president" of Advanced Plastiform and that Hauser "reported to" her or her husband, Steve Judd. She further testified that Hauser was an "office manager" with no managerial responsibility, and that Tripp, while not Hauser's supervisor, was the "direct supervisor" of the production workers and was considered a manager.

The evidence presented supports the Full Commission's conclusion of law that Hauser's death "arose out of and in the course of her employment[.]" The following exchange took place on direct examination of Tripp:

Q. Did you have any discussion with Mr. [Leroy] Mann about what he might do or anybody at the company he might contact about [obtaining] the unemployment benefits?

A. Yes, I did.

. . .

I said, "If you do not understand what I'm telling you," I said, "we have a form at work that explains how to deal with the unemployment, how to get it, the number to call." I said, "You'll need to get up with Jan [Hauser] to get that form or information you may need. You can give her a call on Monday."

Tripp testified that he told Mann to "call or get up with" Hauser because he "didn't want to be involved" in the unemployment benefits process, and he was "kind of letting [Hauser] deal with that end of it." Tripp also testified that on 4 December 1995 Hauser informed him that she was going to meet Mann for lunch. Tripp testified that when he told Mann over the phone that he was being laid off, Mann had seemed "much more upset" than other employees Tripp had contacted, and that Mann's reaction caused him concern. Tripp testified that he did not "want to run into" Hauser and Mann at lunch and he thought an "altercation" might arise if he did. Tripp stated that he believed that Mann's layoff and Advanced Plastiform's layoffs in general were "the only thing that they would be talking about" over

lunch, and that he became concerned for his own safety once he had learned that Hauser was missing.

The evidence before the Full Commission tended to show that Tripp knew that Hauser had prepared the memorandum concerning unemployment compensation and had "distributed [the memorandum] to the employees" on the Friday preceding the Monday of Hauser's murder. Tripp also knew that Mann had not been at work that Friday and thus had not received the memorandum. This evidence supports the Full Commission's finding of fact that the "piece of paper" Hauser was carrying to Mann was the "employee informational sheet regarding unemployment benefits previously typed by" her.

"The mere fact that the injury is the result of the willful or criminal assault of a third person does not prevent the injury from being accidental." *Goodwin v. Bright*, 202 N.C. 481, 484, 163 S.E. 576, 577 (1932) (citation omitted). In *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 377 S.E.2d 777 (1989), a waitress employed at a resort filed a workers' compensation claim to recover for injuries sustained when she tried to escape from a guest of the resort who kidnapped and sexually assaulted her. The attack occurred after the employee's work day had ended and she had stopped on a resort road to assist the guest with apparent car trouble. Our Court stated that "[b]ecause [plaintiff's] *decision to stop* [on the roadside and assist the resort guest] *had its origin in her employment*, we hold that her actions were sufficiently 'work-connected' to warrant a conclusion that her injuries arose out of the employment." *Id.* at 249, 377 S.E.2d at 781 (emphasis in original). "Injuries resulting from an *assault* are caused by 'accident' within the meaning of the [Workers' Compensation] Act when, from the employee's perspective, the assault was unexpected and was without design on her part." *Culpepper* at 247, 377 S.E.2d at 780 (citations omitted). We further stated in *Culpepper* that:

> The words "arising out of . . . the employment" refer to the origin or cause of the accidental injury. Thus, our first inquiry "is whether the employment was a *contributing cause* of the injury." Second, a contributing proximate cause of the injury must be a *risk* inherent or incidental to the employment, and must be one to which the employee would not have been equally exposed apart from the employment. Under this "increased risk" analysis, the "causative danger must be *peculiar to the work and not com-*

*mon to the neighborhood.*" Finally, an injury will be deemed to "arise out of" the employment if the employee's acts on behalf of a third person are of "*appreciable benefit*" to the employer.

*Id.* at 248, 377 S.E.2d at 781 (citations omitted) (emphasis in original). The evidence in *Culpepper* tended to show that plaintiff "was instructed when she was hired 'to be very cordial and friendly and nice and [to] *offer any assistance that [she] could*' to members and guests[.]" *Id.* at 244, 377 S.E.2d at 779 (emphasis in original). Our Court concluded that "the *only* reason [plaintiff] stopped on the resort road . . . was to offer a guest assistance, as her employer instructed her to do." *Id.* at 248, 377 S.E.2d at 781 (emphasis in original). We further stated that "[c]ompensation should be denied only if the circumstances surrounding an assault will not permit a reasonable inference that the *nature* of the employment, rather than some personal relationship, created the risk of attack." *Id.* at 249, 377 S.E.2d at 781-82 (citation omitted) (emphasis in original).

In *Stewart v. Dept. of Corrections*, 29 N.C. App. 735, 737-38, 225 S.E.2d 336, 338 (1976) (citations omitted), this Court stated:

Where the fruit of certain labor accrues either directly or indirectly to the benefit of an employer, employees injured in the course of such work are entitled to compensation under the Workmen's Compensation Act.

This result obtains especially where an employee is called to action by some person superior in authority to him.

. . .

The order or request need not be couched in the imperative. It is sufficient for compensation purposes that the suggestion, request or even the employee's mere perception of what is expected of him under his job classification, serves to motivate undertaking an injury producing activity. So long as ordered to perform by a superior, acts beneficial to the employer which result in injury to performing employees are within the ambit of the act.

In the present case, the evidence tends to show that the reason Hauser met Mann for lunch was to give him the memorandum she had drafted pertaining to unemployment benefits. Steve Judd agreed that Hauser should prepare this work-related document, and Tripp told

Mann to "get up with [Hauser]" if he had any questions about unemployment benefits. Thus there is sufficient evidence to allow "a reasonable inference that the *nature* of the [plaintiff's decedent's] employment, rather than some personal relationship, created the risk of [her] attack." *Culpepper* at 249, 377 S.E.2d at 781-82 (citation omitted) (emphasis in original). Moreover, this evidence tends to show that Hauser was "called to action by some person superior in authority to [her]." *Stewart* at 737, 225 S.E.2d at 338. The Full Commission did not err in concluding that Hauser's death "arose out of and in the course of her employment[.]"

## II.

[2] Defendants argue that the Commission's award of attorneys' fees should be reversed because (1) the issue was not preserved on appeal to the Full Commission, (2) the ruling was not supported by the evidence, and (3) "reversing the Deputy Commissioner's denial of plaintiff's motion for attorney fees, on a cold record, without explanation, and without good cause," is contrary to North Carolina law. We disagree. It was within the Full Commission's discretion to address the issue of attorneys' fees.

We first note that "[a]n abuse of discretion standard of review is applied in an award of attorney fees by the Industrial Commission." *Childress v. Trion, Inc.*, 125 N.C. App. 588, 590, 481 S.E.2d 697, 698, *disc. review denied*, 346 N.C. 276, 487 S.E.2d 541 (1997) (citation omitted).

In the case before us, the Full Commission found as fact that:

21. [The] information[] that Janet Hauser was carrying a work-related paper to Leroy Mann on 4 December 1995[] was known or reasonably should have been known to the Judds, the owners of [Advanced Plastiform], but in response to discovery, the Judds, on behalf of [Advanced Plastiform], failed to disclose this information to the plaintiff. This information was material to one of the most important issues involved in this case, i.e., the work-related nexus of Janet Hauser's trip to meet with Leroy Mann. Failure to disclose this information regarding such a material fact, explained by Ms. Judd as being because Ms. Timm did not actually "see" the document, demonstrates bad faith on the part of the Judds and [Advanced Plastiform] as well as an unfounded stubborn, litigiousness in defense of this case before the Deputy Commissioner. On the other hand, defense counsel

were unaware of this information until the hearing when the testimony of Ms. Timm was taken by telephone.

The Commission also stated that "[a]s a result of the Judds' failure to respond to discovery . . . plaintiff was forced to prove and did, in fact, prove the existence of the evidence suppressed by the Judds, which was material to this case, i.e., the work-related nexus of Janet Hauser's trip." The Full Commission awarded plaintiff "25% of the benefits awarded herein as attorney fees."

Defendants' answers to plaintiff's first set of interrogatories, dated 6 August 1996, particularly interrogatory number six, support the Full Commission's finding of fact that in response to discovery defendants demonstrated bad faith in defending this case. Plaintiff asked defendant the following question:

> 6. Identify each document regarding which you have information may have been transported by decedent, Janet Noble Hauser, to Leroy Mann on Monday, December 4, 1995.

Despite "overwhelming evidence" that Hauser had prepared an "employee informational sheet regarding unemployment benefits" and was carrying that document to Mann, defendants responded:

> ANSWER: Defendants are not aware of any work-related documents that Mrs. Hauser transported to Mr. Mann on or about December 4, 1995. Defendants object to the remainder of Interrogatory #6 which asks defendants to speculate as to what "may have been transported" by Mrs. Hauser to Mr. Mann.

Plaintiff also asked defendants through interrogatories to: (1) "identify any person" who knew that Hauser was "carrying any type of document[] associated with" Mann's employment to Mann when she met him for lunch on 4 December 1995, and (2) identify anyone aware that on the date Hauser met Mann, she was "intending to help him with applying for unemployment benefits[.]" To each of these interrogatories defendants responded that "no such person exists." However, the evidence before the Commission showed that Timm, who answered Advanced Plastiform's telephones at lunch, and Tripp, Advanced Plastiform's production manager supervisor, were aware of Hauser's work-related reason for meeting Mann.

N.C. Gen. Stat. § 97-88.1 (1991) states: "If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the

whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." Rule 802 of the Workers' Compensation Rules of the North Carolina Industrial Commission provides that "failure to comply" with the Workers' Compensation Rules "may subject the violator to any of the sanctions outlined in Rule 37 of the North Carolina Rules of Civil Procedure, including reasonable attorney fees to be taxed against the party or his counsel whose conduct necessitates the order." Rule 37 provides for various sanctions, including attorneys' fees, against parties who, among other things, provide "evasive or incomplete answer[s]" in response to discovery requests. N.C.R. Civ. P. 37(a)(3). Defendants' responses to plaintiff's interrogatories were clearly "evasive and incomplete."

[3] Defendants argue that "by failing to appeal from [the] Deputy Commissioner['s] . . . ruling by identifying this issue on his Form 44[,]" plaintiff has "waived this issue[.]" The record on appeal reflects that plaintiff did raise the issue of attorneys' fees in his brief to the deputy commissioner; the deputy commissioner denied plaintiff's motion; plaintiff appealed to the Full Commission from the deputy commissioner's opinion and award in accordance with the requirements of N.C. Gen. Stat. § 97-85 (1991); and the Full Commission reversed the deputy commissioner, awarding plaintiff workers' compensation benefits and attorneys' fees. However, in his assignments of error in his Form 44, plaintiff did not specifically address the issue of attorneys' fees.

Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission is entitled "Appeal to the Full Commission." Rule 701(2) states:

(2) After receipt of notice of appeal, the Industrial Commission will supply to the appellant Form 44 upon which he must state the grounds for his appeal. The grounds must be stated in particularity, including the specific errors allegedly committed by the Commissioner or Deputy Commissioner and the pages in the transcript on which the alleged errors are recorded. Failure to state with particularity the grounds for appeal shall result in abandonment of such grounds[.]

In *Joyner v. Rocky Mount Mills*, 85 N.C. App. 606, 355 S.E.2d 161 (1987), the deputy commissioner awarded plaintiff $8,000.00 per lung for loss of lung function as a result of an occupational disease. Defendants appealed the award to the Full Commission. The

Commission affirmed the opinion and award of the deputy commissioner but modified the amount payable to $4,000.00 per lung. The Full Commission also reduced the deputy commissioner's award of attorneys' fees from $4,000.00 to $2,000.00. Plaintiff argued on appeal to this Court that "the full commission erred in failing to address" the issue of future medical expenses in its opinion and award. *Joyner* at 607, 355 S.E.2d at 161. We dismissed plaintiff's appeal pursuant to Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission. Our Court stated:

> [T]he Deputy Commissioner made no award for medical expenses pursuant to G.S. 97-59 and plaintiff never appealed from that opinion and award. Only the defendants appealed to the full Commission and the record before us states that the sole issue on appeal was whether the commissioner "erred in awarding plaintiff compensation in the amount of $8,000.00 per lung pursuant to G.S. 97-31(24)."
>
> . . .
>
> Plaintiff has failed to properly preserve his right to appeal the failure of the Deputy Commissioner to order payment of medical expenses under G.S. 97-59. The *record* must in some way reflect that the matter was before the full Commission.

*Id.* at 607-08, 355 S.E.2d at 162.

In the present case, however, the opinion and award of the Full Commission indicates that the issue of attorneys' fees was before the Commission. Unlike the chronology of events in *Joyner*, the deputy commissioner denied plaintiff's motion for attorneys' fees and plaintiff appealed to the Full Commission in a notice of appeal dated 12 June 1997, well within the time limits proscribed by N.C. Gen. Stat. § 97-85, which states:

> If application is made to the Commission within 15 days from the date when notice of the award shall have been given, the full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award[.]

In *Tucker v. Workable Company*, 129 N.C. App. 695, 701, 501 S.E.2d 360, 365 (1998) (citation omitted) (emphasis in original), our Court stated:

**HAUSER v. ADVANCED PLASTIFORM, INC.**

[133 N.C. App. 378 (1999)]

Although Rule 701 provides that the appellant must state with particularity the grounds for appeal, "[t]his Court has held that when the matter is 'appealed' to the full Commission pursuant to G.S. 97-85, it is the duty and responsibility of the full Commission to decide *all of the matters in controversy between the parties.*"

We further stated, " '[i]nasmuch as the Industrial Commission decides claims without formal pleadings, it is the duty of the Commission to *consider every aspect of plaintiff's claim* whether before a hearing officer or on appeal to the full Commission.' " *Id.* (citations omitted) (emphasis in original).

[T]he Commission is allowed to award attorneys' fees to the employee, in addition to the compensation amount originally awarded. Furthermore, N.C. Gen. Stat. § 97-80 (1991) provides the Industrial Commission with certain powers, including the taxing of costs and contempt powers; and N.C. Gen. Stat. § 97-88.1 (1991) allows the Industrial Commission to assess the entire costs, including attorneys' fees, when a case is unreasonably defended.

*Tucker* at 704, 501 S.E.2d at 366 (citation omitted).

Plaintiff appealed the issue of attorneys' fees in accordance with the guidelines set forth in N.C. Gen. Stat. § 97-85. As *Tucker* indicates, it is incumbent upon "the full Commission to decide *all of the matters in controversy between the parties.*" *Tucker* at 701, 501 S.E.2d at 365 (citation omitted) (emphasis in original). Upon careful examination of the opinion and award of the Full Commission, we find no abuse of discretion in awarding plaintiff attorneys' fees. The opinion and award of the Full Commission is affirmed.

Affirmed.

Judges JOHN and WALKER concur.