***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. During the pertinent times in question, the employer-employee relationship existed between the defendant — employer and plaintiff-employee in North Carolina.
3. Montgomery Insurance Company is the carrier on the risk.
4. Plaintiff claims to have sustained mental, emotional and physical injuries as a result of an assault, which occurred in the course and scope of her employment on June 6, 2001, and defendants have denied this claim.
5. Plaintiff's average weekly wage may be determined by wage documentation and/or a Form 22 to be submitted at the time of the hearing before the deputy commissioner.
6. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1 — Plaintiff's Medical Records
b. Stipulated Exhibit #2 — Industrial Commission Pleadings Index
c. Stipulated Exhibit #3 — Industrial Commission Form 22
d. Stipulated Exhibit #4 — Winston-Salem Police Report
7. The following documents were received and admitted into evidence at the hearing before the deputy commissioner:
a. Pre-Trial Agreement entered into by the parties.
b. Certified copies of two Forsyth County criminal files.
8. The depositions of Tiffany Hope O'Dell, Dr. Kenneth G. Tomberlin, Dr. Nancy L. Murphy and Megan Haszard Logan, licensed clinical social worker, were received and admitted into evidence.
 ***********
Based upon the evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 67 years old at the time of the hearing before the deputy commissioner (date of birth: June 30, 1935) was born and raised in Germany and has her high school diploma. She moved to the United States in 1960, and after raising her children, she worked as a housekeeper and housekeeping supervisor for a number of years. Plaintiff has no additional job experience.
2. Plaintiff retired from housekeeping at age 62 and thereafter in the late 1990s began working two part-time jobs as a housekeeper. Plaintiff worked three hours per day, six days per week for defendant-employer cleaning its restaurant prior to business hours. She earned $8.50 per hour, and her average weekly wage was $136.92. In addition, plaintiff worked five days per week, two to four hours per day performing housecleaning duties at a hotel establishment across the street from defendant-employer earning $7.00 per hour.
3. Defendant-employer's restaurant consists of four stories, with a kitchen in the basement, a first and second story containing dining rooms and a bar, and a fourth story where supplies are kept. Plaintiff's job duties included arriving at approximately 8:00 a.m., climbing two flights of stairs to obtain cleaning supplies, and scrubbing, dusting and mopping the first and second floor dining rooms. As part of her job duties, plaintiff was responsible for making coffee for the kitchen crew, as the coffee maker was on the first level where she worked. The kitchen crew also came to the first level periodically to obtain soda from the bar area. During plaintiff's work hours there was generally no manager or supervisor on the first or second floor, and plaintiff worked alone.
4. In or about April 2001 defendant-employer hired Joseph Tyrone Tuttle to work as a line cook with job duties including preparation of food. Defendant-employer did not perform a background check of Mr. Tuttle, which would have revealed that he had a criminal record for violence against women. Mr. Tuttle and plaintiff had no personal relationship and did not come into contact with each other outside of employment. There was no evidence in the record to establish or suggest that Mr. Tuttle had any anger or hatred towards plaintiff.
5. On June 6, 2001, plaintiff reported to work shortly before 8:00 a.m. As usual, there was no manager or supervisor on the floors where plaintiff worked, however, kitchen manager Steve Novicki, baker Rosa Gonzalez and Joseph Tuttle were working in the kitchen area, which is located in the basement of the restaurant. After obtaining her cleaning supplies, plaintiff made a pot of coffee on the first floor for the kitchen crew. Making the coffee for the kitchen crew was a part of plaintiff's normal activities that she performed for the benefit of defendant-employer. Plaintiff was working unsupervised on the first floor when thereafter, Mr. Tuttle came up from the kitchen into the first floor dining room on several occasions, complaining he was feeling sick and obtaining soda from the bar. Mr. Tuttle also went upstairs to the second floor dining room, advising plaintiff that he wanted to check it out. On another occasion Mr. Tuttle entered the first floor dining room where plaintiff was working carrying a large butcher knife from the kitchen. Plaintiff advised Mr. Tuttle that he should not be walking around with a knife as he could hurt himself.
6. Later in the morning of June 6, 2001, Mr. Tuttle again came upstairs from the kitchen to the first floor where plaintiff was working alone. He was carrying a butcher knife from the kitchen of defendant-employer. Mr. Tuttle told plaintiff that she needed to make another pot of coffee for the kitchen crew, as the pot she had previously made was cold. Plaintiff began making a pot of coffee for Mr. Tuttle and the kitchen crew, and in the process, was attacked from behind by Mr. Tuttle who held the kitchen knife to her. Mr. Tuttle dragged the plaintiff to the empty second floor of the restaurant where he proceeded to rape plaintiff. During the sexual assault, plaintiff suffered cuts on her right hand in an attempt to defend herself, and she feared that she would be stabbed and killed. After the assault, Mr. Tuttle instructed plaintiff to go to the bathroom on the second floor and clean herself. Plaintiff feared that if she did so, Mr. Tuttle would follow her and kill her in the bathroom. Thus, instead of proceeding to the bathroom, plaintiff ran down the stairs. Mr. Tuttle followed her, threatened her, and threw the butcher knife at plaintiff. The knife landed on the stairs and was later found by the police. On June 6, 2001, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with the defendant-employer.
7. After escaping from Mr. Tuttle, plaintiff ran across the street to the Inn where she worked her second job. She had on no clothing from the waist down and after pounding on the door of the Inn was assisted by Todd Sanders and Bobbi Wooten who contacted the police.
8. Plaintiff provided a statement to the police and was thereafter taken to the hospital where she again spoke to the police about the incident. She was treated for lacerations of her right hand, and a rape kit was obtained. Medications including Valium and Doxycyclin were prescribed. Mr. Tuttle was captured two days later, and on October 23, 2000, he plead guilty to first degree rape, first degree kidnapping, first degree sexual offense, and assault with a deadly weapon. He is currently in prison.
9. On June 11, 2001, plaintiff was seen by her family physician, internist Dr. Nancy Murphy, who noted bruises on plaintiff's body and prescribed Zoloft in addition to the Valium and Doxycyclin previously given to plaintiff.
10. On June 12, 2001 a male investigator on behalf of the carrier came to plaintiff's house to obtain a statement from her. Plaintiff was unfamiliar with the investigator and told him that she had given her statement to the police and that she did not want to relive the horror of the rape. Although plaintiff did not provide names of treating physicians, she advised the investigator that she was taking Zoloft and Valium for her nerves and that she was uncertain when, if ever, she could return to work. Plaintiff's reaction to the investigator and her reluctance to speak with an unfamiliar man about her assault was understandable and reasonable in light of the circumstances.
11. Shortly thereafter, plaintiff went to Germany on a trip to visit her family. The trip had been planned and paid for prior to her assault. Plaintiff felt safe with her family in Germany and her therapist later indicated that it was appropriate for her to be with her family at that time. Upon returning from her trip, plaintiff did not return to work for either Salem Tavern or the Inn across the street.
12. While in Germany on June 19, 2001, plaintiff experienced an unusual sensation, which caused her to fall. Plaintiff attributed this sensation to the Valium and Zoloft, which she was taking due to the assault. Plaintiff later reported side effects to the medication to her physician. The Full Commission finds that there is insufficient evidence in the record to establish a causal connection between plaintiff's medication and the fall she experienced while in Germany.
13. As a result of the fall, plaintiff shattered her left knee and was hospitalized for twelve days. She underwent surgery to wire her knee together. After returning to the United States from her trip, plaintiff continued treatment with Dr. Kenneth Tomberlin for her knee and underwent physical therapy as well as surgery to remove the wires. She was rated with a fifteen (15%) to twenty percent (20%) permanent partial disability to her leg by Dr. Tomberlin and was released from his care in December 2001. The permanent partial disability and medical treatment received by plaintiff in regards to her knee injury is unrelated to her compensable injury by accident of June 6, 2001.
14. As a result of the fall, plaintiff continues to experience difficulties with her left knee including pain while kneeling and going upstairs. In light of these symptoms, plaintiff would not be able to work as a housekeeper.
15. After returning to the United States in late June 2001, plaintiff also received treatment for her psychological conditions. She underwent periodic visits with her family physician as well as psychiatrists referred by her family physician who provided medication management. Plaintiff was unable to afford frequent psychiatric treatment and instead underwent therapy through Family Services, Inc. After additional counseling by the Violence Response Department of Family Services, plaintiff was seen on a regular basis by clinical therapist and licensed clinical social worker, Megan Haszard Logan. Plaintiff's treatment was paid for by the North Carolina State Victim's Compensation Fund for one year from the date of her rape. Thereafter, plaintiff had to pay for the treatment on her own, and due to a lack of funds, had to reduce the frequency of visits. Plaintiff also was responsible for paying for her medication.
16. Ms. Logan, who is licensed to render psychiatric diagnoses, diagnosed plaintiff with post-traumatic stress disorder, major depressive disorder, agoraphobia (intense fear of leaving her home) and insomnia. Both Ms. Logan and Dr. Murphy, plaintiff's internist, related these conditions to the sexual assault. Plaintiff has undergone therapy sessions where she was taught cognitive behavioral skills, but continues to suffer from anxiety, depression, agoraphobia and hypervigilence. Plaintiff has a sustained fear that she will be attacked again, so she is very fearful of males, particularly African-American males. She continues to take antidepressants and will require ongoing medication and therapy.
17. Ms. Logan and Dr. Murphy agree that since the time of the rape, plaintiff has been unable to return to any employment due to her psychological conditions. The Full Commission finds that plaintiff continues to be unable to work in any capacity.
18. Plaintiff sustained a compensable injury by accident on June 6, 2001 arising out of and in the course and scope of her employment. Plaintiff was unexpectedly attacked during her work hours at a time when there was no traffic from customers and the only other people present on the defendant-employer's premises were plaintiff's fellow employees. At the time she was attacked in an isolated part of defendant-employer's premises, plaintiff was performing her job duties, including making coffee for the kitchen staff. Her attack occurred during a time that the plaintiff and Mr. Tuttle were unsupervised on the floors where she worked, and the knife used to assault plaintiff was one from defendant-employer's kitchen. Under all of these circumstances, plaintiff's assault was connected to her job duties and arose out of her employment.
19. As a result of the June 6, 2001 accident, plaintiff sustained emotional, psychological and physical injuries, including post-traumatic stress disorder, agoraphobia, depression, insomnia, a right hand cut, and other physical injuries associated with the sexual assault. She has been unable to work due to these injuries since June 6, 2001. Plaintiff continues to suffer from debilitating and disabling psychological and physical conditions related to this accident, which prohibit her from gainful employment. In light of the ongoing effect of these conditions, her age, lack of work experience and education, she will not have wage earning capacity for the remainder of her life. She will also require ongoing medical treatment.
20. The only investigation conducted by the defendant-carrier in this case after the rape was through an independent investigator who interviewed Jeff Scales, restaurant manager, and Scott Hamilton, general manager, as well as conducted a brief interview with plaintiff in June 2001. The investigator provided highlights of his conversations in a brief report to the adjuster for defendant-carrier, Tiffany Hope O'Dell. Although the investigator's report contained no information about plaintiff's job duties, the duties of Mr. Tuttle, or specifics as to what plaintiff was doing at the time she was attacked, Ms. O'Dell conducted no independent investigation of plaintiff's claim. She did not independently speak with any witnesses, including witnesses identified in the police reports attached to the investigator's report. She did not contact the restaurant manager, general manager or plaintiff's supervisor, Doris Hamilton. She did not obtain the criminal file of Joseph Tuttle regarding the assault at issue, even though the file was a public record and contained information relevant to the claim.
21. In addition, the defendant-carrier made no other attempt to contact the plaintiff in this case. The carrier did not send any letters to plaintiff or make any phone calls to her requesting a statement or asking her to sign a medical release to obtain medical information. Instead, the carrier denied this claim contending that plaintiff was uncooperative. Although by the end of June 2001, Ms. O'Dell had received the report of the independent investigator, which constituted her entire investigation in this case, she failed to file a Form 61 denying this claim until September 20, 2001, a total of 106 days after the sexual assault occurred.
22. After plaintiff hired an attorney and filed a hearing request, she responded to discovery, producing relevant medical records and a complete copy of the police investigation containing statements of plaintiff and witnesses. Nevertheless, defendants maintained their denial of this claim.
23. Defendants, on the other hand, failed to properly and timely provide plaintiff with information and documents she requested in discovery requests. On April 2, 2002, plaintiff served Interrogatories and Requests for Production of Documents on defendants. Only after repeated requests from plaintiff, through counsel, did defendants serve inadequate responses on plaintiff on August 7, 2002. On October 4, 2002, plaintiff filed a Motion to Compel additional responses to the discovery requests. On February 12, 2003, an order was entered by the Industrial Commission compelling defendants to fully respond to the discovery requests. By the time of the hearing before the deputy commissioner, defendants had still not fully complied with the order of the Industrial Commission. Therefore, plaintiff filed a Motion to Strike Defenses on April 21, 2003. Defendants' failure to properly and timely respond to discovery prejudiced the plaintiff and required her to incur attorney's fees in the amount of $448.75.
24. Defendants' actions in this case constitute stubborn, unfounded litigiousness. The carrier, in particular, failed to properly and reasonably investigate this claim. The denial of the defendants was based upon an inadequate investigation and was not timely. Defendant-carrier's persistent denial of this claim was unreasonable and based on stubborn, unfounded litgiousness.
25. Based on calculations from the Form 22 stipulated into evidence, plaintiff's average weekly wage is $136.92, yielding a compensation rate of $91.28.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of showing that she sustained an injury by accident arising out of and in the course and scope of her employment in order to prove that an assault is compensable. Robbins v. Nicholson,281 N.C. 234, 188 S.E.2d 350 (1972). An assault constitutes an accident where it is unexpected and without design on the part of the employee who suffers from it. Id. An assault arises out of employment where any reasonable relationship to employment exists or employment is a contributory cause. Kiger v. Bahnson Service Company, 260 N.C. 760,762,33 S.E.2d 702, 709 (1963). Plaintiff was raped while performing her job duties of making coffee for the benefit of defendant-employer for the kitchen crew during her work hours on the premises of her employment. The assailant used a knife from defendant-employer's kitchen to assault plaintiff. The assailant had no personal grudge or history with plaintiff from which his choice to assault her with a deadly weapon could have arisen. Further, had defendant-employer performed a simple background check, the assailant's history of violence against women would have been evident. Defendant-employer's actions placed plaintiff in proximity during a time of day when there were very few people at the restaurant and no supervisor on the floors where she was working with her assailant who had a history of violence against women. Therefore plaintiff's assault arose out of her employment. Culpepper v. Fairfield SapphireValley, 93 N.C. App. 242, 377 S.E.2d 777, affirmed, 325 N.C. 702,386 S.E.2d 174 (1989, Capel v. Bullard Restaurant, Inc., 152 N.C. App. 421,567 S.E.2d 828 (2002), Hauser v. Advance Platform, Inc., 133 N.C. App. 378,514 S.E.2d 545 (1999), Dildy v. MBW Ins. Inc., 152 N.C. App. 65, 68-69,566 S.E.2d 759, 763(2002), Wake County Hospital System, Inc. v. SafetyNational Corp., 217 N.C. App. 33, 487 S.E.2d 789 (1997).
2. In order to be compensable, plaintiff's injuries must be causally related to the accident. Phillips v. U.S. Air, Inc., 120 N.C. App. 530,463 S.E.2d 259 (1995), aff'd, 343 N.C. 302, 469 S.E.2d 552 (1996). Plaintiff's various psychological conditions, including post-traumatic stress disorder, depression, insomnia and agoraphobia, are all related to the June 6, 2001 injury by accident.
3. Plaintiff also has the burden of proving that she has sustained disability, or a loss of wage earning capacity, due to her injuries. One method of proving disability is through the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of working in any employment. Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff has satisfied her burden of presenting medical evidence that due to the psychological impact of the June 6, 2001 accident, she has been unable to work since the sexual assault in any capacity. In light of plaintiff's age, limited work experience, disability due to her knee injury and the severity of her psychological condition, plaintiff is permanently and totally disabled from any employment. N.C. Gen. Stat. § 97-29. Plaintiff is therefore entitled to payment of disability benefits at a rate of $91.28 from June 6, 2001 for the remainder of plaintiff's life or until further Order of the Industrial Commission.
4. Defendants are responsible for payment of medical compensation for injuries arising out of the June 6, 2001 accident. N.C. Gen. Stat. §97-25. Defendants shall be responsible for payment of all past and future medical treatment occurred by plaintiff as a result of her sexual assault. This shall include, but shall not be limited to, payment of therapy, psychiatric and psychological treatment, and medication. To the extent that plaintiff, or any other source, including the North Carolina State Victim's Compensation Fund, has paid for any medical treatment related to this claim, defendants shall be responsible for reimbursing plaintiff and such sources for their payments. There is also a substantial risk of the necessity for future medical treatment as a result of plaintiff's psychological conditions, and defendants shall therefore be responsible for the payment of all future medical compensation for these conditions for the remainder of plaintiff's lifetime. N.C. Gen. Stat. § 97-25.1.
5. If the Industrial Commission shall determine that any hearing has been brought, prosecuted or defended without reasonable grounds, it may assess the whole cost of the proceedings including reasonable fees for defendants' attorney or plaintiff's attorney upon the party who has brought or defended them. N.C. Gen. Stat. § 97-88.1. It is proper for the Commission to consider the reasonableness of an investigation of a claim and defendants' failure to accept a claim when liability becomes clear in determining whether costs and fees shall be awarded to plaintiff. Cialino v. Wal-Mart Stores, 156 N.C. App. 463, 474,577 S.E.2d 345, 353 (2003) Defendants' investigation of this claim was inadequate and unreasonable and the defendants' denial and defense of claim is without reasonable grounds and constitutes stubborn, unfounded litigiousness. Defendants shall be responsible for the payment of plaintiff's costs and attorney's fees associated with this claim.
6. Defendants failed to admit or deny this claim within the time frame prescribed by N.C. Gen. Stat. § 97-18, and is therefore subject to sanctions for the same.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay permanent and total disability benefits to plaintiff from June 6, 2001 to continue for the remainder of the plaintiff's lifetime at a rate of $91.28 per week, or until further Order of the Industrial Commission. To the extent that such benefits have accrued, they shall be paid to plaintiff in a lump sum, said sum not being subject to attorney's fees awarded herein.
2. Defendants shall pay all medical compensation incurred as a result of the June 6, 2001 accident. To the extent that such compensation has already been paid by plaintiff or any other source, defendants shall be responsible for repayment of expenses related to plaintiff's psychological and physical injuries, not including the knee injury. Defendants shall also be responsible for payment of all future lifetime medical treatment for plaintiff's psychological conditions.
3. As sanctions for their stubborn, unfounded litigiousness, defendants shall pay plaintiff's costs and attorney's fees associated with bringing this claim. As reasonable attorney's fees for plaintiff's counsel, defendants shall pay directly to plaintiff's counsel twenty-five percent (25%) of the sums due plaintiff in Paragraph One of this AWARD, to be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff shall be paid directly to plaintiff's counsel by defendants and shall not be deducted from the sums due plaintiff. Thereafter, defendants shall pay the equivalent of every fourth check directly to plaintiff's counsel, for the remainder of plaintiff's life or until further Order of the Industrial Commission. Defendants shall also pay attorney's fees in the amount of $448.75, representing attorney's fees for plaintiff's filing of the Motion to Compel Discovery and Motion to Strike Defenses, to be paid within twenty (20) days of the file date of this Opinion and Award.
4. As sanctions for their untimely denial of this claim, defendant-carrier shall pay the sum of $1,000.00, made payable to the North Carolina Industrial Commission, sent to the attention of Marion Breyer, within thirty (30) days of the file date of this Opinion and Award.
5. Defendants shall pay the costs.
This the 18th day of March 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER