***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law which were entered into by the parties at the hearing as
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder or parties.
4. Plaintiff alleges to have sustained a compensable injury on June 15, 2000.
5. An employment relationship existed between the employee and employer on June 15, 2000.
6. The parties stipulated into evidence as Exhibit 1, the pre-trial agreement.
7. The parties stipulated into evidence as Exhibit 2, the NCIC forms.
8. The parties stipulated into evidence as Exhibit 3, the indexed and paginated medical records.
9. The parties stipulated into evidence as Exhibit 4, the indexed medical bills.
10. The parties stipulated into evidence as Exhibit 5, the true copies of records pertaining to 00 CR 3307.
11. The parties stipulated into evidence as Exhibit 6, the four photographs of plaintiff's injuries.
12. The parties stipulated into evidence as Exhibit 7, the plaintiff's responses to Defendants' Second Set of Interrogatories.
13. The parties stipulated to I.C. Form 22. Based upon this Form 22 it is determined by the Full Commission that plaintiff's average weekly wage is $332.64, yielding a compensation rate of $221.77.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained in Deposition of Dr. Thomas J. Seely and Mr. Richard K. Tamura, M.A. are ruled upon in accordance with the applicable rule of law and the Opinions and Awards in this case.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was twenty years of age, having a birth date of May 23, 1981. Plaintiff is single, has one child and lives at home with his mother. Plaintiff completed the tenth grade of high school, has not obtained his GED, and has received no further training or education.
2. Prior to his employment with the defendant-employer, plaintiff was employed at McDonald's, The Omelet Shoppe, and Gardenscape, Inc.
3. Plaintiff was employed by defendant-employer for approximately sixteen days without incident prior to June 15, 2000.
4. Plaintiff's job title with defendant-employer was can hauler, and his job duty consisted of pushing cans of yarn from the upstairs area of the Charles Craft plant down to another department where the yarn was placed on cones.
5. Mike Strickland also worked for defendant-employer as a can hauler. On several occasions prior to June 15, 2000, plaintiff spoke with his supervisor, Beverly Harrison about Mike Strickland's lack of job performance. Plaintiff complained to his supervisor that this resulted in extra work for him to perform.
6. On June 15, 2000, plaintiff spoke to Mike Strickland about his job performance, and a disagreement ensued between the two as to how the job duties should be performed. Mike Strickland proceeded to push plaintiff, and plaintiff pushed him back. The two separated. As Mr. Strickland was leaving he saw an iron pipe, approximately forty-two (42) inches long and slightly less than one (1) inch in diameter, from a nearby elevator and picked it up.
7. The plaintiff left the area where he and Mr. Strickland had their altercation and went upstairs to Beverly Harrison's office, and informed Ms. Harrison of what had transpired. Following plaintiff's altercation with Mr. Strickland over work duties, he prepared to leave the building, and as he passed through a first door, he saw Mike Strickland ahead standing at a second door. Plaintiff had to pass through the second door in order to exit the building. When plaintiff reached the second door where Mike Strickland was standing, Mr. Strickland again pushed plaintiff. Plaintiff pushed Mr. Strickland back, and Mr. Strickland struck plaintiff in the upper left arm with the iron pipe. As plaintiff turned to get away, Mr. Strickland struck plaintiff again in the back of the head causing an open brain injury and skull fracture. Rufus Smith, an employee of defendant-employer, grabbed plaintiff by the shirt and took him outside. A short time later, the police and an ambulance arrived at the scene.
8. The Full Commission gives greater weight to plaintiff's account of how this altercation began than to Mr. Strickland's version that plaintiff began the altercation as a result of jealousy regarding Mr. Strickland's car and women. Mike Strickland was the initial aggressor of this altercation on June 15, 2000. Any action taken by plaintiff was for the purpose of protecting himself against Mr. Strickland's assault. Plaintiff's conduct was not a proximate cause of any injury he suffered.
9. Mike Strickland pled guilty to the assault of plaintiff as a result of this June 15, 2000 work incident.
10. On June 15, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in a closed-head injury.
11. Following plaintiff's June 15, 2000 injury by accident, he was transported to the Emergency Department at the Carolinas Medical Center. Plaintiff was examined at the Emergency Room and admitted overnight to the neurosurgery ward for observation. Plaintiff was again seen at the Emergency Room at Carolinas Medical Center on June 17, 2000 with complaints of head pain and dizziness and was examined and discharged.
12. Plaintiff was next examined by Dr. Victoria Rommel of Anson Family Medicine on July 7, 2000. Plaintiff presented to Dr. Rommel with complaints of being angry and losing up to twelve pounds since he was hit in the head by a co-worker at work. Plaintiff also complained of having headaches, which caused him to be dizzy and nauseated. Dr. Rommel noted on July 7, 2000 that there were concerns about plaintiff's emotions, his quick temper, and that plaintiff's mother stated that plaintiff was a different person since he had been hit in the head by a co-worker at work.
13. Plaintiff was seen by Dr. Rommel on several occasions and referred plaintiff to be seen by Richard Tamura, a psychologist at Sandhills Center for Mental Health. Dr. Rommel's diagnosis of plaintiff was closed-head injury, post-traumatic stress syndrome, and post-traumatic migraine.
14. Plaintiff was seen by Dr. P. Jeffrey Ewert on July 11, 2000, for neuropsychological consultation and evaluation. Dr. Ewert noted that plaintiff was confused, that his response style was extremely slow and his attention appeared impaired. Dr. Ewert's first diagnostic impression of plaintiff was mild closed head injury suffered from his assault, with significant post-traumatic headaches, as well as cognitive disorder. Dr. Ewert noted that Plaintiff was experiencing a significant personality change after the closed head injury. On August 8, 2000, Dr. Ewert again evaluated Plaintiff and performed a full battery of tests. Dr. Ewert noted that the results of plaintiff's neurophychological evaluation are consistent with cognitive deficits typically found following closed head injury. Dr. Ewert further noted that plaintiff has the capacity for explosive behavior and he should be monitored for suicidal ideation. He further noted that in all probability the personality changes seen in plaintiff are the result of both his closed head injury and his premorbid problems, and that plaintiff's most recent behavioral problems are probably an exacerbation of a premorbid level of functioning. Finally, Dr. Ewert noted that plaintiff's increased anti-social behavior is more than likely the result of a disinhibiting effect from his closed head injury.
15. Following the evaluation on August 8, 2000, Dr. Ewert recommended psychiatric re-evaluation to consider possible anti-psychotic medication; inpatient hospitalization or rehabilitation to incorporate occupational therapy; speech therapy; physical therapy; individual psychotherapy and cognitive retraining. Dr. Ewert even went so far as to recommend an inpatient program at Florida Institute of Neurological Rehabilitation in Wachula, Florida for four to six months, to be followed by a community re-entry program closer to home.
16. At plaintiff's last follow-up visit on September 5, 2000, Dr. Ewert noted that plaintiff had apparently been beating the walls with his hand and had been committed because there was some concern that he would commit suicide. It was also noted that plaintiff continues to be in need of individual psychotherapy, and that plaintiff is on anti-depressant medication, which is absolutely essential given his psychological problems. Dr. Ewert further noted that plaintiff was under the care of another mental health professional, and therefore would provide no further follow-up at that time.
17. Plaintiff was seen by Richard Tamura, a psychologist at Sandhills Center for Mental Health. It was noted by Mr. Tamura that plaintiff has had depression and anger management problems secondary to his assault by a co-worker at his job on June 15, 2000. Mr. Tamura noted that plaintiff had a depressive disorder and that he had begun to develop more profound psychotic behaviors, such as delusions and hallucinations. Mr. Tamura diagnosed plaintiff with major depression/single episode psychosis, personality disorder and open head injury.
18. Plaintiff was also seen and treated by Dr. Seely, a psychiatrist also with the Sandhills Center. Following his examination of plaintiff, Dr. Seely diagnosed plaintiff with major depression, single episode, mild to moderate versus mood disorder, secondary to head trauma. Plaintiff has continued to receive treatment by Dr. Seely for his ongoing depression.
19. Depression can be a disabling condition. It is clear from the testimony of Dr. Seely that plaintiff's depression was caused by or resulted from his June 15, 2000 injury by accident resulting in plaintiff's closed head injury. It is also clear from Dr. Seely's testimony that plaintiff's pre-existing temper control problems were aggravated by plaintiff's June 15, 2000 injury by accident resulting in plaintiff's closed head injury.
20. Plaintiff has not returned to work with defendant-employer nor with any other employer following his June 15, 2000 injury by accident. Defendant-employer also has not offered plaintiff any work. Defendants have presented no evidence of any suitable jobs that are available to plaintiff or that have been offered to plaintiff. Plaintiff has no education beyond high school and has no skills or work experience other than as a general laborer. Defendants have not provided plaintiff with any vocational assistance.
21. As a result of plaintiff's depression and his temper control problems, plaintiff has been unable to perform any type of employment since June 15, 2000.
22. After giving due consideration to plaintiff's testimony and the record evidence along with the medical evidence, greater weight is given to plaintiff's testimony and the medical evidence, including the testimony which supports or corroborates plaintiff's allegations of sustaining an injury by accident on June 15, 2000 and the resulting disability from this injury by accident.
23. Plaintiff has shown by the greater weight of the competent credible evidence and medical evidence of record, that as a result of his June 15, 2000 injury by accident, he has suffered from depression and an aggravation of his pre-existing temper control problems resulting in disability since June 15, 2000.
24. Plaintiff has not yet reached maximum medical improvement and remains in the healing period. Plaintiff has not yet been evaluated for any permanent impairment.
25. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his June 15, 2000 compensable injury by accident, including all treatment recommended by Dr. Seely and Mr. Tamura.
26. Plaintiff is capable given time, sufficient rehabilitative assistance, and with specific work restrictions, of performing some level of employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of showing that he sustained an injury by accident arising out of and in the course and scope of his employment in order to prove that an assault is compensable.Robbins v. Nicholson, 281 N.C. 234, 188 S.E.2d 350 (1972). An assault constitutes an accident where it is unexpected and without design on the part of the employee who suffers from it.Id. An assault arises out of employment where any reasonable relationship to employment exists or employment is a contributory cause. Kiger v. Bahnson Service Company, 260 N.C. 760,762,33 S.E.2d 702, 709 (1963). Plaintiff was struck from behind after an argument with his fellow employee regarding the workload. Where a worker is injured by a fellow employee because of a dispute about the manner of doing the work he is employed to do, the accident to the injured worker grows out of the employment and is compensable. Withers v. Black, 230 N.C. 428, 53 S.E.2d 668
(1949). Therefore plaintiff's assault arose out of his employment. Culpepper v. Fairfield Sapphire Valley,93 N.C. App. 242, 377 S.E.2d 777, affirmed, 325 N.C. 702, 386 S.E.2d 174
(1989, Capel v. Bullard Restaurant, Inc., 152 N.C. App. 421,567 S.E.2d 828 (2002), Hauser v. Advance Platform, Inc.,133 N.C. App. 378, 514 S.E.2d 545 (1999), Dildy v. MBW Ins. Inc.,152 N.C. App. 65, 68-69, 566 S.E.2d 759, 763(2002), Wake County HospitalSystem, Inc. v. Safety National Corp., 217 N.C. App. 33,487 S.E.2d 789 (1997).
2. Plaintiff is not barred from receiving compensation benefits pursuant to N.C. Gen. Stat. § 97-12 as the greater weight of the evidence shows that plaintiff did not willfully intend to injure or kill himself or another.
3. On June 15, 2000, plaintiff sustained an injury by accident resulting in a closed head injury. N.C. Gen. Stat. § 97-2 (6).
4. As a direct and proximate result of plaintiff's compensable injury by accident on June 15, 2000, and his resulting medical conditions, plaintiff has not returned to earning any wages in his former job or any other job since June 15, 2000 and continuing. As a direct and proximate consequence of plaintiff's compensable injury by accident, plaintiff is entitled to temporary total disability compensation at a rate of $221.77 from June 15, 2000, and continuing until plaintiff returns to work or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff has not yet reached maximum medical improvement and remains in the healing period. Plaintiff has not yet been evaluated for any permanent disability. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his June 15, 2000 compensable injury by accident, including all treatment recommended by Dr. Seely and Mr. Tamura. N.C. Gen. Stat. §§ 97-2(19), 97-25 97-25.1.
6. Plaintiff is entitled to have defendants provide him with vocational rehabilitation services in order to assist plaintiff in his efforts at achieving functional capabilities, which will enable plaintiff to reach a level of stable employability, and then to assist plaintiff at locating suitable employment within his work restrictions given by Dr. Seely. N.C. Gen. Stat. §§ 97-2(19) 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at a rate of $221.77 per week from June 15, 2000 to the present, and continue until such time as plaintiff returns to work, or until so ordered by the Commission. Such amount that has already accrued shall be paid in a lump sum, and all amounts shall be subject to a reasonable attorney's fee approved in Paragraph #2.
2. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under Paragraph #1 of this award is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent of the lump sum due plaintiff under Paragraph #1 of this award which has accrued to date shall be paid directly to plaintiff's counsel. Plaintiff's counsel shall receive every fourth check of all future compensation.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury so long as it tends to effect a cure and give relief or lessen plaintiff's disability. These medical expenses shall include continuing treatment of plaintiff's as recommended by Dr. Seely and Mr. Tamura.
4. Defendants shall provide plaintiff with vocational rehabilitative services in order to assist plaintiff in his efforts at achieving functional capabilities, which will enable plaintiff to reach a level of stable employability, and then to assist plaintiff at locating suitable employment within his work restrictions given by Dr. Seely.
5. Defendants shall pay the costs.
This the 30th day of June 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/llc